RICHARD S. ENDRES (SBN 144853)
rendres@londonfischer.com
PATRICK G. BOLLIG (SBN 248255)
pbollig@londonfischer.com
LONDON FISCHER LLP
2505 McCabe Way, Suite 100
Irvine, California 92614
T: (949) 252-0550 | F:  (949) 252-0553

Attorneys for Plaintiff
ILLINOIS UNION INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ILLINOIS UNION INSURANCE COMPANY,<br><br>                    Plaintiff,<br><br>          v.<br><br>MATTEL, INC., AND FISHER-PRICE, INC.,<br><br>                    Defendants. | No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff, Illinois Union Insurance Company ("IUIC" or "Plaintiff"), brings this declaratory judgment action against Mattel, Inc. ("Mattel") and Fisher-Price, Inc. ("Fisher-Price") (collectively, the "Defendants"), and alleges as follows:

1.     This is an action for declaratory judgment brought pursuant to 28 U.S.C. § 2201.

2.     IUIC issued to Mattel an ACE Advantage Multimedia Liability Policy providing coverage from April 15, 2005 to April 15, 2006. Thereafter, IUIC issued annual renewal policies to Mattel, the last of which expired on April 30, 2019.

3.      On November 6, 2024, Defendants reported to IUIC by email that three class actions had been filed against them involving their Snuga Swing product.

4.     In December 2024, a fourth class action was filed against Defendants.

5.     On January 23, 2025, the four class actions were consolidated in a class

action lawsuit captioned, *In re Snuga Swing Litigation*, Master File No. 1:24-cv-00992-JLS (W.D.N.Y.) (the "Snuga Swing Consolidated Action").

6.    For the reasons stated below, IUIC brings this declaratory judgment action seeking a declaration that the Snuga Swing Consolidated Action constitutes a single **Claim**[1], as defined in Policy No. EON G21663748 006, covering the period April 15, 2010 to April 15, 2011 (the "Policy"); and that pursuant to the terms of that Policy, IUIC has no duty to advance **Claims Expenses** incurred or to be incurred in defending the Snuga Swing Consolidated Action. A copy of the Policy is attached hereto as Exhibit 1.

## THE PARTIES

7.    Plaintiff IUIC is a corporation organized under the laws of Illinois with a principal place of business in Philadelphia, Pennsylvania, and is in the business of providing liability insurance.

8.    Upon information and belief, Defendant Mattel, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in the city of El Segundo, California.

9.    Upon information and belief, Defendant Fisher-Price, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in the city of East Aurora, New York.

## JURISDICTION AND VENUE

10.    This is an action for declaratory judgment under 28 U.S.C. § 2201, et seq.

11.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a) and 2201 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of costs and interest, based on

---

[1] Bolded terms not otherwise defined herein, are defined in the Policy.

the potential costs of defending the Snuga Swing Consolidated Action.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 as the case concerns coverage under an insurance policy issued in this District, concerning claims pending against a putative insured residing within the geographical boundaries of this District.

## FACTUAL BACKGROUND

### A. The Policy

13.     The Policy issued to Mattel has a limit of liability of $15,000,000.00 for each **Claim** and in the aggregate, subject to a $1,000,000.00 per-**Claim** retention. Ex. 1 at Items 3 and 4.

14.     The Policy's Insuring Agreement states that:

> [t]he **Company** will pay on behalf of the **Insured** all sums in excess of the Retention that the **Insured** shall become legally obligated to pay, including such legal obligations **Assumed Under Contract**, as **Damages** and **Claims Expenses** because of a **Claim** against the **Insured** by reason of a **Wrongful Act** that occurs during the **Policy Period**.

Policy at § I.A.

15.     The Policy defines **Claim**, in relevant part, to include "a civil proceeding against any **Insured** for monetary or non-monetary relief, commenced by the service of a complaint or similar pleading[.]" *Id.* at § II.E. The Snuga Swing Consolidated Action, discussed below, is a **Claim** under the Policy.

16.     The Policy covers **Wrongful Acts** made in connection with **Media Services**, which the Policy defines to include: "researching, preparation, compilation, investigation, acquisition, production, serialization, release, exhibition, distribution, licensing, sale, broadcasting, publication, utterance, **Advertising** or merchandising of **Matter**." *Id.* at § II.L.

17.     The Policy defines **Matter** to include: "any communication, regardless of its nature or form, and the content therein, and the use of such **Matter** by others with permission of the **Insured**." *Id.* at § II.K.

18.     With respect to **Media Services**, the Policy defines **Wrongful Acts** as including, in relevant part:

> any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission which results in **Damages** because a third party, which has no ownership relationship with the **Insured**, acts upon or makes a decision or decisions based on **Matter** disseminated by the **Insured** or with the **Insured's** permission.

*Id.* at § II.U.(i).

19.     The Defendants are **Insureds** under the Policy *Id.* at Item 1, § II.I.

20.     Pursuant to the terms of the Policy, "[i]t shall be the duty of the **Insureds** and not the **Company** to defend **Claims**." *Id.* at § I.B.1. However, IUIC has the right to associate in the defense of the **Claim** and the right to appoint defense counsel, and the **Insureds** shall not incur any **Claims Expenses** in excess of the Retention without the prior written consent of IUIC. *Id.* at § I.B.2.

### i. The Policy's Interrelated Acts Provisions

21.     The Policy defines **Interrelated Wrongful Acts** to mean "all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes." Ex. 1 at § II.J.

22.     The Policy further states that:

> All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**. **Interrelated Wrongful Acts** that take place on one or more dates

during the **Policy Period**, or that take place during two or more consecutive policies issued by the **Company** shall be subject to the Limit of Liability and Retention in effect when the first **Wrongful Act** took place.

Ex.1 at § IV.A.1 (the "Interrelated Wrongful Acts Provision").

### ii. The Policy's Nonconformance Exclusion

23.    Section III.L. of the Policy states in relevant part:

The **Company** shall not be liable for **Damages** or **Claims Expenses** on account of any **Claim** . . . alleging, based upon, arising out of or attributable to the actual or alleged incorrect description of the price or authenticity of any goods or services, or the failure of any goods or services to conform with the standards of quality or performance stated in **Matter**.

Ex.1 at §III.L. (the "Nonconformance Exclusion").

### iii. The Policy's Unfair Trade Practices Exclusion

24.    Section III.H. of the Policy, states in relevant part:

The **Company** shall not be liable for **Damages** or **Claims Expenses** on account of any **Claim** . . . alleging, based upon, arising out of or attributable to any actual or alleged price fixing, restraint of trade, monopolization, unfair trade practices, or other violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated there under, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world.

Ex. 1 at § III.H. (the "Unfair Trade Practices Exclusion").

## B. Notice Of Claim

25.     On November 6, 2024, Defendants reported to IUIC by email three lawsuits filed against the Defendants in October 2024, involving its Snuga Swing product. The email advised that "[t]his matter is reported under any and all applicable policies whether or not cited." A copy of the email and its attachments are attached hereto as Exhibit 2.

26.     The three actions reported in the November 6, 2024 email are captioned as follows: *Rabia Shahbaz v. Mattel, Inc., et al.*, Case No. 2:24-cv-09174-MCS-PD (C.D. Cal.); *Destini Bigelow v. Mattel, Inc., et al.*, Case No. 1:24-cv-00992 (W.D.N.Y.); and *Grace Wall v. Mattel, Inc., et al.*, Case No. 1:24-cv-01037 (W.D.N.Y.).

27.     A fourth action, similar to the three that Defendants reported to IUIC, was subsequently filed against the Defendants in December 2024. That Action was captioned  *Valeria Gates, et al. v. Mattel, Inc., et al.*, Case No. 2:24-cv-09953-MCS-PD (C.D. Cal.) (the four actions filed against the Defendants involving the Snuga Swing are jointly referred to as the "Snuga Swing Actions."). A copy of the complaint filed in the *Valeria Gates* Action is attached hereto as Exhibit 3.

28.     On January 23, 2025, the Snuga Swing Actions were consolidated in the United States District Court for the Western District of New York, in the matter captioned, *In re Snuga Swing Litigation*, Master File No. 1:24-cv-00992-JLS (W.D.N.Y.) (the "Snuga Swing Consolidated Action").

## C. The Snuga Swing Consolidated Action

29.     The operative pleading in the Snuga Swing Consolidated Action is the consolidated class action complaint (the "Consolidated Complaint") filed on March

31, 2025, by plaintiffs Denise Federico, Chaya Dayan, Dezarae O'Rourke, and Richard Spencer (the "Snuga Swing Plaintiffs") individually and on behalf of all others similarly situated. A copy of the Consolidated Complaint is attached hereto as Exhibit 4.

30.     The Consolidated Complaint alleges that the Defendants' "Snuga Swings (the "Snuga Swings" or "Products") are a line of **dangerously defective inclined infant swings**, which Defendants have designed, manufactured, marketed, and sold as "safe and suitable for infant use and sleep since 2010, but which Defendants now admit . . . are unsafe for infant sleep " Ex. 4 at ¶ 1. (Emphasis in original.)

31.     The Snuga Swing Plaintiffs specifically assert that over the course of decades, through a "multi-channel brand marketing campaign," Defendants gained the trust of consumers as one of the most recognized manufacturers of products for infants and children "with a commitment to safety, quality, reliance on qualified medical advice, and compliance with industry standards and guidance." *Id.* at ¶ 4.

32.     Through what the Consolidated Complaint identifies as Defendants' "Deceptive Safe Sleep Marketing campaign" for the Snuga Swings, it is alleged that Defendants "uniformly and intentionally represented to consumers that the Snuga Swings are safe and suitable for infant sleep" and "intentionally failed to disclose to consumers that the Snuga Swings are not safe or suitable for infant sleep in any duration." *Id.* at ¶ 5.

33.     The alleged uniform messaging and representations about the Products were made "via various channels, including, but not limited to, the Snuga Swing's packaging and labeling, Defendants' websites including their official social media platforms, Defendants' authorized retailer's websites, and directly to consumers through Defendants' consumer support employees and agents." *Id.* at ¶ 120.

34.     Specifically, the Consolidated Complaint claims that Defendants

"intentionally and materially omitted that the Snuga Swings are not safe for infant sleep in any duration" and that the Snuga Swings' packaging and Defendants' own websites and social media represented that the Snuga Swings are safe and intended for infant sleep. *Id.* at ¶ 7.

35.    The Snuga Swing Plaintiffs also allege that the Defendants made affirmative promises to their consumers that the Snuga Swings are intended to "***rock [your baby] to sleep***." *Id.* at ¶ 125 (emphasis in original).

36.    According to the Consolidated Complaint, through the packaging and marketing materials of the Snuga Swings, Defendants expressly represented to consumers that their babies can "***sleep in safety***" in the Snuga Swings and included clear visual representations of babies sleeping in the Snuga Swings. *Id.* at ¶ 8 (emphasis in original).

37.    The Snuga Swing Plaintiffs assert that Defendants' marketing and packaging of the product clearly represents to its consumers that the Snuga Swings can safely be used for infant sleep. *Id.* at ¶ 12.

38.    In addition, the Consolidated Complaint asserts that "[f]rom Defendants' Deceptive Safe Sleep Marketing, consumers cannot reasonably discern that the Snuga Swings pose the risk of injury or death when used for infant sleep, and do not meet scientific, medical, and industry standards for infant sleep." *Id.* at ¶157.

39.    Despite Defendants' marketing and packaging regarding the Products' suitability for safe infant sleeping, the Consolidated Complaint alleges that the Snuga Swings' "design creates a biomechanical environment that is unsafe and unsuitable for infant sleep at any duration (the "Defect"). *Id.* at ¶ 19.

40.    Specifically, the Consolidated Complaint alleges that Defendants are well aware that the safe infant sleep requires the infants to nap or sleep on a "firm, flat, non-inclined surface, with breathable material and without pillows or soft toys." *Id.* at ¶ 164.

41.    The Consolidated Complaint further alleges that Defendants designed, manufactured, marketed, and sold the Snuga Swings to consumers as safe for infant sleep, even though the design included an inclined and concave sleep surface with unsuitable materials, including a soft pillow headrest. *Id.* at ¶ 166.

42.    Defendants purportedly knew that scientific studies and recommendations from the American Academy of Pediatrics ("AAP"), including recommendations issued in the early 1990s, advised that infants should sleep on their backs on a firm flat surface. *Id.* at ¶¶ 167-70.

43.    Despite Defendants' understanding that the Snuga Swings were unsafe for infant sleep, the Consolidated Complaint claims that Defendants failed to issue an adequate and effective recall. Instead, the recall advised Defendants' consumers to remove parts of the Snuga Swings which allegedly did not, in fact, eliminate the Defect, as the Snuga Swings "will continue to lull children into unsafe sleep." *Id.* at ¶ 236.

44.    Moreover, the Consolidated Complaint alleges that Defendants marketing of the Snuga Swings as safe, suitable, and intended for sleep was deliberate and overt, *id.* at ¶ 15, and specifically asserts that a common question of law and fact among all Members of the Class is "[w]hether Defendants engaged in unfair, unconscionable, or deceptive trade practices by selling and/or marketing the Snuga Swings containing the Defect[,] *id.* at ¶ 361(g), and seeks injunctive relief for Defendants' ongoing "deceptive and unfair conduct[.]" *Id.* at ¶ 389.

45.    The Consolidated Complaint further claims that Defendants neglected to issue an adequate recall of the Snuga Swings by, among other things, failing to instruct consumers to not use the Snuga Swings for naps or reduced periods of sleep, "which is instructed as appropriate use on the Snuga Swings' label, and bolstered by Defendants' longstanding Deceptive Safe Sleep Marketing." *Id.* at ¶ 235. Further, the Consolidated Complaint alleges that Defendants' acts regarding the inadequate recall

"constitutes an unfair and deceptive trade practice." *Id.* at ¶ 38. "Plaintiffs specifically seek injunctive and declaratory relief requiring Defendants to cease their ***unfair, deceptive, and unlawful conduct***, including a complete recall of the entire product line and reimbursement of the full purchase price." *Id.* at ¶ 365 (emphasis added).

**D. Each Count of the Snuga Swing Consolidated Action Arises Out of the Snuga Swings' Failure to Conform with the Standards of Quality or Performance Communicated in Defendants' Marketing and Advertising of the Products as Suitable for Safe Infant Sleep**

46.     The Consolidated Complaint raises twenty (20) causes of action against the Defendants, which all relate to Defendants' wrongful communications made, via their multi-channel Deceptive Safe Sleep Marketing campaign. These wrongful communications all concern the Snuga Swings' quality or performance as suitable for infant sleep.

47.     For example, the following allegations in the Consolidated Complaint, among others, reflect that each count relates to the Snuga Swings' failure to conform with standards of quality or performance represented in Defendants' communications:

a. "Defendants' conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing the ***Deceptive Safe Sleep Marketing related to the Snuga Swings safety for infant sleep, when in fact the Snuga Swings are unsafe for infant sleep***." (Ex.1, Count I, Common Law Fraud, at ¶ 376) (emphasis added);

b. "Plaintiffs and Class Members were injured as a direct and proximate result of Defendants' [false Deceptive Safe Sleep Marketing and accompanying misrepresentations and material omissions] because they would not have purchased the Snuga Swings or paid the price they paid for the ***Snuga Swings if they had known that the Snuga Swings were unsafe for use***." (*Id.*, Count II, Negligent

Misrepresentation, at ¶¶ 397-98) (emphasis added);

c. "Defendants, through themselves, their agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the ***utility, reliability, safety, and performance of the Snuga Swings***[.]" (*Id.*, Count III, California Legal Remedies Act, at ¶ 403) (emphasis added);

d. "Defendants were aware that the Snuga Swings, which do not provide a firm, flat and level sleep surface, which were sold with bedding, and which include an unsafe incline, ***are not suitable for infant sleep, regardless of duration. Nonetheless, Defendants, through their misrepresentations, misleading statements, and omissions detailed herein, continued to sell the Snuga Swings in the United States for infant sleep***[.]" (*Id.*, Count IV, California Unfair Competition Law, at ¶ 443) (emphasis added);

e. Through their Deceptive Safe Sleep Marketing, Defendants made representations to the public, including Plaintiff and Class Members, ***about the safety and propriety of the Snuga Swings for use regarding infant sleep. These representations are false and misleading because the Snuga Swings are unsafe for infant sleep in any duration***." (*Id.*, Count V, California False Advertisement Law, at ¶ 463) (emphasis added);

f. "[T]hrough their Deceptive Safe Sleep Marketing described herein, ***Defendants expressly warranted and represented that the Snuga Swings were safe and suitable for infant sleep*** . . . . Defendants breached the express warranties because the ***Snuga Swings are not safe or suitable for infant sleep, as described herein***." (*Id.*, Count

VI, Breach of Express Warranty, at ¶¶ 477, 479) (emphasis added);

g. "Defendants breached the implied warranty of merchantability because the Snuga Swings, **which were marketed as safe and suitable for infant sleep**, to be merchantable, must provide a suitable and safe sleeping environment, and, for the reasons stated above, **the Snuga Swings are not safe and, in fact, are dangerous**." (*Id.*, Count VII, Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, at ¶ 486) (emphasis added);

h. "By placing the Snuga Swings in the stream of commerce, Defendants impliedly warranted that the Snuga Swings are safe, and that **all claims in their advertising and marketing of the Snuga Swing were true, including that the Snuga Swing is safe for its customary and intended use, infant sleep**[.]" (*Id.*, Count VIII, Breach of Express Warranty, at ¶ 507) (emphasis added);

i. "At all times relevant, Defendants had a duty to exercise reasonable care in the **marketing, advertisement**, and sale of the Snuga Swings. . . . **Defendants omitted, concealed, and failed to disclose** to consumers that the Snuga Swings poses serious safety risks to infants, including that the Snuga Swings were inherently defective; unreasonably dangerous; **not fit to be used for its intended purpose; contained a Defect; and created an unsafe sleeping environment for infants**." (*Id.*, Count IX, Negligence, at ¶¶ 525, 530) (emphasis added);

j. "Defendants deceptively represented the Snuga Swings as being safe and suitable for infant sleep in their **packaging, labeling, marketing, advertising, and promotions**. Contrary to these representations, the Snuga Swings pose an unreasonable risk of serious injury and death

to infants." (*Id.*, Count X, Unjust Enrichment, at ¶ 548) (emphasis added);

k. "Defendants were aware that the Snuga Swings, which do not provide a firm, flat and level sleep surface, which were sold with bedding, and which include an unsafe incline, ***are not suitable for infant sleep, regardless of duration***. Nonetheless, Defendants, through their ***misrepresentations, misleading statements, and omissions*** detailed herein, continued to sell the Snuga Swings in the United States for infant sleep[.]" (*Id.*, Count XI, New York General Business Law § 349, at ¶ 561) (emphasis added);

l. "Through their Deceptive Safe Sleep Marketing, Defendants made representations to the public, including Plaintiffs and Class Members, ***about the safety and propriety of the Snuga Swings for use regarding infant sleep***. These representations are false and misleading because the Snuga Swings are ***unsafe for infant sleep in any duration***." (*Id.*, Count XII, New York General Business Law § 350, at ¶ 584) (emphasis added);

m. "Further, through their Deceptive Safe Sleep Marketing described herein, ***Defendants expressly warranted and represented that the Snuga Swings were safe and suitable for infant sleep***, including naps or reduced periods of sleep. . . . Defendants breached the express warranties because ***the Snuga Swings are not safe or suitable for infant sleep***, as described herein." (*Id.*, Count XIII, Breach of Express Warranty, at ¶¶ 603, 605) (emphasis added);

n. "Defendants were negligent in . . . [c]ontinuing to disseminate information to its consumers, ***which indicates or implies that Defendants' Snuga Swing is safe and suitable for infant sleep***." (*Id.*,

Count XIV, Negligence, at ¶ 623 (xii.)) (emphasis added);

o. "Defendants *deceptively represented the Snuga Swings as being safe and suitable for infant sleep in their packaging, labeling, marketing, advertising, and promotions*. Contrary to these representations, the Snuga Swings pose an unreasonable risk of serious injury and death to infants." (*Id.*, Count XV, Unjust Enrichment, at ¶ 635) (emphasis added);

p. "Defendants' scheme and concealment *of the true characteristics of the Snuga Swings* were material to Plaintiff and Class Members, as Defendants intended. *Had Plaintiff and Class Members known the truth, Illinois Plaintiff and Class Members would not have purchased Snuga Swings, or would have paid significantly less for them*." (*Id.*, Count XVI, Illinois Consumer Fraud and Deceptive Business Practices Act, at ¶ 652) (emphasis added);

q. "Defendants' unfair or deceptive acts or practices, including *misrepresentations, concealments, omissions, and suppressions of material facts*, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Plaintiff and Class Members, *about the true safety and reliability of the Snuga Swings, the quality of the Snuga Swings*, and the true value of the Snuga Swings." (*Id.*, Count XVII, Illinois Uniform Deceptive Trade Practices Act, at ¶ 664) (emphasis added);

r. "Further, *through their Deceptive Safe Sleep Marketing* described herein, Defendants expressly warranted and represented that the Snuga Swings were safe and suitable for infant sleep[.] . . . Defendants breached the express warranties because *the Snuga*

***Swings are not safe or suitable for infant sleep***, as described herein." (*Id.*, Count XVIII, Breach of Express Warranties, at ¶¶ 681, 683) (emphasis added);

s. "At all times relevant, Defendants had a duty to exercise reasonable care in the ***marketing, advertisement***, and sale of the Snuga Swings. . . . Defendants omitted, concealed, and failed to disclose to consumers that the Snuga Swings poses serious safety risks to infants, including that the Snuga Swings were inherently defective; unreasonably dangerous; ***not fit to be used for its intended purpose; contained a Defect; and created an unsafe sleeping environment for infants***." (*Id.*, Count XIX, Negligence, at ¶¶ 690, 695) (emphasis added); and

t. "As a result of Defendants' material, deceptive design, manufacture, distribution, ***marketing, advertising, labeling*** and sale of the Snuga Swings, Defendants were unjustly enriched at the expense of Plaintiff and all other Class Members through the purchase of the Snuga Swings, ***because it does not provide the benefits as represented and exposes their child(ren) to greater and more serious risks than represented***." (*Id.*, Count XX, Unjust Enrichment, at ¶ 712) (emphasis added).

**E. Each Count of the Snuga Swing Consolidated Action Arises Out of Defendants' Unfair Trade Practices, Including Defendants' Misrepresentations Concerning the Snuga Swings' Suitability for Safe Infant Sleep and Inadequate Recall of the Snuga Swings**

48.    The Consolidated Complaint's twenty (20) causes of action against the Defendants each relate to Defendants' unfair trade practices, which the Consolidated Complaint describes, in significant part, as: (a) Defendants' misrepresentations and omissions in their deceptive marketing of the Snuga Swings as suitable for safe infant

sleep, despite knowing the Products were unsafe for infant sleep; and (b) Defendants'
issuance of an unfair and deceptive recall that Defendants knew was inadequate
because it did not sufficiently instruct consumers to avoid the use of the Snuga Swings
for *all* infant sleep (including naps and short periods of sleep).

49.    For example, the following allegations in the Consolidated Complaint,
among others, reflect that each count relates to the above-referenced unfair trade
practices of Defendants:

a. "Defendants made false or misleading statements to Plaintiffs and
Class Members regarding the safety of the Snuga Swings, including
that they were safe and suitable for infant sleep, such as naps or
reduced periods of sleep. These uniform and pervasive
representations were made ***through Defendants' multimedia
Deceptive Safe Sleep Marketing Campaign***[.]"  (Ex.1, Count I,
Common Law Fraud, at ¶ 378) (emphasis added);

b. "Defendants made the misrepresentations and material omissions
***through their Deceptive Safe Sleep Marketing***, and otherwise failed
to disclose the Defect, they knew that they were false." (*Id.*, Count II,
Negligent Misrepresentation, at ¶ 394) (emphasis added);

c. "Specifically, by engaging in the false, deceptive and misleading
Deceptive Safe Sleep Marketing as described herein, which included
marketing messages directed at Plaintiff and the Class that the Snuga
Swings are safe and suitable for infant sleep, ***Defendants engaged in
one or more of the below stated unfair or deceptive business
practices*** as defined in Cal. Civ. Code § 1770(a)." (*Id.*, Count III,
California Legal Remedies Act, at ¶ 409) (emphasis added);

d. "***Defendants' actions constitute "unfair" business acts or practices***
because, as alleged above, ***Defendants engaged in deceptive and***

*false advertising, and misrepresented and omitted material facts regarding the Snuga Swings*, and thereby offend an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities substantially injurious to consumers. This conduct constitutes violations of the unfair prong of the UCL." (*Id.*, Count IV, California Unfair Competition Law, at ¶ 438) (emphasis added);

e. "Defendants disseminated misleading information and omitted material information regarding the Snuga Swings, and Defendants know, or should have known through the exercise of reasonable care *that the Deceptive Safe Sleep Marketing and accompanying misrepresentations and omissions were and continue to be misleading*[.]" (*Id.*, Count V, California False Advertisement Law, at ¶ 465) (emphasis added);

f. "[T]hrough their *Deceptive Safe Sleep Marketing described herein*, Defendants expressly warranted and represented that the Snuga Swings were safe and suitable for infant sleep . . . . Defendants breached the express warranties because the Snuga Swings are not safe or suitable for infant sleep, as described herein." (*Id.*, Count VI, Breach of Express Warranty, at ¶¶ 477, 479) (emphasis added);

g. "Defendants were at all relevant times the manufacturers, distributors, warrantors, and/or sellers of the Snuga Swings. Defendants knew or had reason to know of the specific use for which the Snuga Swings were purchased[,]" and "Defendants breached the implied warranty of merchantability because the Snuga Swings, *which were marketed as safe and suitable for infant sleep*, to be merchantable, must provide a suitable and safe sleeping environment,

and, for the reasons stated above, the Snuga Swings are not safe and, in fact, are dangerous." (*Id.*, Count VII, Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, at ¶¶ 484, 486) (emphasis added);

h. "As merchants, Defendants knew that consumers, including Plaintiff and the Class, relied upon Defendants to design, ***manufacture, distribute, market, advertise, label, and sell products that are safe and not deceptively marketed***[,]" and "[a]t all times that Defendants warranted and sold the Snuga Swing, they knew or should have known that their warranties were false, and yet they did not disclose the truth, or stop manufacturing or selling the Snuga Swing, and instead continued to issue false warranties, and continued to insist the product is safe." (*Id.*, Count VIII, Breach of Express Warranty, at ¶¶ 508, 515) (emphasis added);

i. "Defendants omitted, concealed, and failed to disclose to consumers that the Snuga Swings poses serious safety risks to infants, including that the Snuga Swings were inherently defective; unreasonably dangerous; not fit to be used for its intended purpose; contained a Defect; and created an unsafe sleeping environment for infants[,]" but "[r]ather than disclose this information, ***Defendants, through their Deceptive Safe Sleep Marketing, inter alia, marketed the Snuga Swings as safe and suitable for infant sleep***." (*Id.*, Count IX, Negligence, at ¶ 530) (emphasis added);

j. "***Defendants deceptively represented*** the Snuga Swings as being safe and suitable for infant sleep in their ***packaging, labeling, marketing, advertising, and promotions***. Contrary to these representations, the Snuga Swings pose an unreasonable risk of serious injury and death

to infants." (*Id.*, Count X, Unjust Enrichment, at ¶ 548) (emphasis added);

k. "The Recall, which came far too late as it followed at least five infant deaths, and is egregious, ineffective, and inadequate because it fails to prevent the risk of death or injury to infants because it does not eliminate the Defect, yet recommends that parents continue to use the Product, which is known to lull infants to sleep, and which has already led to multiple infant deaths; ignores ***Defendants' longstanding, uniform, and pervasive Deceptive Safe Sleep Marketing campaign and omissions*** regarding the presence of the Defect preventing babies from safely sleeping for any amount of time during its use[.]" (*Id.*, Count XI, New York General Business Law § 349, at ¶ 562) (emphasis added);

l. "***Defendants' Deceptive Safe Sleep Marketing and accompanying misrepresentations and omissions [about] the Snuga Swings were false, misleading, and likely to deceive Plaintiffs and other reasonable consumers***[,]" and "[h]ad Defendants disclosed the true nature of the Snuga Swings (that they contained the dangerous Defect and/or were illegal to sell) P***laintiffs and Class Members would not have purchased the Snuga Swings or would have paid substantially less for the Snuga Swings***." (*Id.*, Count XII, New York General Business Law § 350, at ¶¶ 591-92) (emphasis added);

m. "Further, through their ***Deceptive Safe Sleep Marketing described herein, Defendants expressly warranted and represented that the Snuga Swings were safe and suitable for infant sleep***, including naps or reduced periods of sleep. . . . Defendants breached the express warranties because the Snuga Swings are not safe or suitable for

infant sleep, as described herein." (*Id.*, Count XIII, Breach of Express Warranty, at ¶¶ 603, 605) (emphasis added);

n. "Defendants were negligent in . . . *[a]dvertising, marketing, and recommending the use of the Snuga Swing* while concealing and failing to disclose or warn of the dangers known by Defendants to be associated with or caused by the use of the Snuga Swing[.]" (*Id.*, Count XIV, Negligence, at ¶ 623 (xi.)) (emphasis added);

o. "*Defendants deceptively represented the Snuga Swings as being safe and suitable for infant sleep in their packaging, labeling, marketing, advertising, and promotions*. Contrary to these representations, the Snuga Swings pose an unreasonable risk of serious injury and death to infants." (*Id.*, Count XV, Unjust Enrichment, at ¶ 635) (emphasis added);

p. "*In the course of its business*, Defendants, through themselves, their agents, employees, and/or subsidiaries, violated the ICFA by knowingly and *intentionally misrepresenting, omitting, concealing, and failing to disclose* material facts regarding the reliability, safety, and performance of the Snuga Swings, as detailed above[,]" and "Defendants' *unfair or deceptive acts or practices*, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, Plaintiff and Class Members, about the true safety and reliability of the Snuga Swings, the quality of the Snuga Swings, and the true value of the Snuga Swings." (*Id.*, Count XVI, Illinois Consumer Fraud and Deceptive Business Practices Act, at ¶¶ 647, 651) (emphasis added);

q. "***Defendants' unfair or deceptive acts or practices***, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Plaintiff and Class Members, about the true safety and reliability of the Snuga Swings, the quality of the Snuga Swings, and the true value of the Snuga Swings." (*Id.*, Count XVII, Illinois Uniform Deceptive Trade Practices Act, at ¶ 664) (emphasis added);

r. "Further, ***through their Deceptive Safe Sleep Marketing described herein***, Defendants expressly warranted and represented that the Snuga Swings were safe and suitable for infant sleep[.] . . . Defendants breached the express warranties because the Snuga Swings are not safe or suitable for infant sleep, as described herein." (*Id.*, Count XVIII, Breach of Express Warranties, at ¶¶ 681, 683) (emphasis added);

s. "Defendants failed to adequately warn Plaintiff and Class Members that the Snuga Swings contained the Defect, were not safe or suitable for infant sleep, and could and have caused infants to be placed in dangerous sleep positions, suffocate, and die. Rather than disclose this information, ***Defendants, through their Deceptive Safe Sleep Marketing, inter alia, marketed the Snuga Swings as safe and suitable for infant sleep.***" (*Id.*, Count XIX, Negligence, at ¶ 695) (emphasis added); and

t. "As a result of Defendants' material, ***deceptive design, manufacture, distribution, marketing, advertising, labeling and sale of the Snuga Swings***, Defendants were unjustly enriched at the expense of Plaintiff

and all other Class Members through the purchase of the Snuga Swings, because it does not provide the benefits as represented and exposes their child(ren) to greater and more serious risks than represented." (*Id.*, Count XX, Unjust Enrichment, at ¶ 712) (emphasis added).

50.    In fact, the Consolidated Complaint asserts specific causes of action for Defendants' unfair trade practices, including among other causes of action, (1) Count III, California Legal Remedies Act, California Civil Code §§ 1750 *et seq.* for Defendants' "unfair methods of competition or deceptive acts or practices" and "unfair or deceptive business practices" by, among other things, "implementing the inadequate Recall"; (2) Count XI, New York General Business Law § 349, for Defendants' deceptive acts or practices in overtly distributing and marketing the Snuga Swings as suitable for infant sleep, despite knowing the Products were unsafe for infant sleep; and (3) Count XVI, Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Illinois Competition Statute 505/1, *et seq.*, for Defendants' knowing distribution and marketing of the Snuga Swings as suitable for safe infant, which were sold with an unsafe incline and are not suitable for infant sleep.

## COUNT I

### (DECLARATORY JUDGMENT – THE SNUGA SWING CONSOLIDATED ACTION IS A CLAIM UNDER THE POLICY)

51.    IUIC incorporates by reference its allegations in Paragraphs 1 through 50 above as though fully set forth therein.

52.    As stated above, the Policy defines **Interrelated Wrongful Acts** to mean "all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes." Ex. 1 at § II.J.

53.    The Policy further states that:

All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**. **Interrelated Wrongful Acts** that take place on one or more dates during the **Policy Period**, or that take place during two or more consecutive policies issued by the **Company** shall be subject to the Limit of Liability and Retention in effect when the first **Wrongful Act** took place.

*Id.* at § IV.A.1.

54.    Each Count in the Consolidated Complaint in the Snuga Swing Consolidated Action arises out of the same **Wrongful Act** and/or **Interrelated Wrongful Acts** in that they all arise out of the Defendants' misrepresentations about their Snuga Swings products, "a line of ***dangerously defective inclined infant swings***, which Defendants have designed, manufactured, marketed, and sold as safe and suitable for infant use and sleep since 2010, but which Defendants now admit . . . are unsafe for infant sleep." Ex. 2 at ¶ 1 (emphasis in original).

55.    The Consolidated Complaint further alleges that the Defendants' **Wrongful Act** and/or **Interrelated Wrongful Acts** were being committed "since 2010." *Id*.

56.    Because the Consolidated Complaint alleges that the first **Wrongful Act** occurred in 2010[2], the Snuga Swing Consolidated Action is deemed one **Claim** under the Policy, first made during the Policy's April 15, 2010 to April 15, 2011 policy

---

[2] The Consolidated Complaint cites to three recall notices issued by the United States Consumer Product Safety Commission, which state that the Snuga Swing was sold between October 2010 and January 2024. *Id*. at ¶ 2 fn. 2-4. If discovery shows that the Defendants' **Wrongful Acts** asserted herein began before April 15, 2010 (the inception date of the Policy), Chubb reserves the right to assert that its prior Policy, Policy No. EON G21663748 005, covering Mattel for the policy period of April 15, 2009 to April 15, 2010 applies . That policy, in all relevant respects,  contains the same terms conditions and exclusions as the April 2010 - April 2011 Policy.

period.

57.    Despite Defendants' seeking coverage for the Snuga Swing Consolidated Action under various policies issued by IUIC, IUIC has taken the position herein and in its correspondence that the Snuga Swing Consolidated Action must be deemed one **Claim** under one policy, the April 2010 - April 2011 Policy. Therefore, an actual, justiciable controversy exists between IUIC and the Defendants regarding their rights and duties under the Policy.

58.    Based on the foregoing, IUIC is entitled to a judicial determination and judgment, pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure, declaring that (a) the Snuga Swing Consolidated Action is a **Claim** under the Policy, and (b) that the Snuga Swing Consolidated Action is subject to the terms, Limit of Liability, and Retention under the Policy.

## COUNT II

### (DECLARATORY JUDGMENT –
### THE NONCORMANCE EXCLUSION IS TRIGGERED)

59.    IUIC incorporates by reference its allegations in Paragraphs 1 through 58 above as though fully set forth therein.

60.    As stated above, the Policy contains the Nonconformance Exclusion, which states in relevant part the following:

"the **Company** shall not be liable for **Damages** or **Claims Expenses** on account of any **Claim** . . . alleging, based upon, arising out of or attributable to the actual or alleged . . . failure of any goods or services to conform with the standards of quality or performance stated in **Matter**.

Ex. 1 at § III.L.

61.    The Policy defines **Matter** to include: "any communication, regardless of its nature or form, and the content therein, and the use of such **Matter** by others

with permission of the **Insured**." *Id.* at § II.K.

62.    Specifically, the Consolidated Complaint in the Snuga Swing Consolidated Action alleges that Defendants, through a multi-channel brand marketing campaign, "uniformly and intentionally represented to consumers that the Snuga Swings are safe and suitable for infant sleep, including naps and reduced periods of sleep, and uniformly and intentionally failed to disclose to consumers that the Snuga Swings are not safe or suitable for infant sleep in any duration." Ex. 2 at ¶ 5.

63.    In addition, the Snuga Swing Plaintiffs assert that Defendants made uniform representations on the "Snuga Swing's packaging, Defendants' own websites and official social media sites, and the websites of authorized retailers, that the Snuga Swings are safe and intended for infant sleep, including naps or reduced periods of sleep." *Id.* at ¶ 7.

64.    The Consolidated Complaint further claims that through their packaging and marketing, Defendants "specifically represented to consumers that their babies can '***sleep in safety***' in the Snuga Swings, also including clear visual representations of babies sleeping in the Snuga Swings" on authorized retailer websites. *Id.* at ¶ 8 (emphasis in original).

65.    Yet, the Consolidated Complaint claims that the Snuga Swings are defective as they create a biomechanical environment that is unsafe and unsuitable for infant sleep at any duration, and the defect "presents safety hazards for infants during regular and intended use, which is inconsistent with reasonable consumer expectations and contrary to Defendants' Deceptive Safe Sleep Marketing." *Id.* at ¶ 20.

66.    Accordingly, the allegations in the Consolidated Complaint for the Snuga Swing Consolidated Action are based upon and/or arise out of "the failure of . . . . goods [the Snuga Swings] . . . to conform with the standards of quality or

performance [suitability for safe infant sleep] stated in **Matter** [Defendants' communications]." Ex. 1 at § III.L.

67.     Therefore, under the terms of the Policy, coverage for the Snuga Swing Consolidated Action is barred.

68.     Despite Defendants' seeking coverage from IUIC for the Snuga Swing Consolidated Action under the Policy, IUIC has taken the position herein and in its correspondence that coverage is barred for that Action because the Policy's Nonconformance Exclusion is triggered. Therefore, an actual, justiciable controversy exists between IUIC and the Defendants regarding their rights and duties under the Policy.

69.     Based on the foregoing, IUIC is entitled to a judicial determination and judgment, pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure, declaring that (a) the Policy does not afford coverage for the Snuga Swing Consolidated Action because the Nonconformance Exclusion is triggered, and (b) IUIC has no duty to advance **Claims Expenses** incurred or to be incurred in defending the Snuga Swing Consolidated Action.

## COUNT III

### (DECLARATORY JUDGMENT – THE UNFAIR TRADE PRACTICES EXCLUSION IS TRIGGERED)

70.     IUIC incorporates by reference its allegations in Paragraphs 1 through 69 above as though fully set forth therein.

71.     As stated above, the Policy contains the Unfair Trade Practices Exclusion, which states in relevant part the following:

The **Company** shall not be liable for **Damages** or **Claims Expenses** on account of any **Claim** . . . alleging, based upon, arising out of or attributable to any actual or alleged . . . unfair trade practices . . . or any

similar provision of any federal, state, or local statutory law or common law anywhere in the world.

Ex. 1 at § III.H.

72.    Specifically, the Consolidated Complaint in the Snuga Swing Consolidated Action alleges that Defendants:

> intended that their misrepresentations and omissions of material fact would deceive or mislead Plaintiffs and members of the Nationwide class and the California, New York, and Illinois Classes and induce them to purchase the Snuga Swings.

Ex. 2 at ¶ 386.

> Plaintiffs and members of the Nationwide Class and the California, New York and Illinois Classes justifiably relied on Defendants' misrepresentations and omissions of material facts regarding the Snuga Swings, as described above

*Id.* at ¶ 387.

> Each Plaintiff decided to purchase a Snuga Swing based in part on the Defendants' representations regarding the safety and suitability of the Snuga Swings for infant sleep, and the specifications.

*Id.* at ¶ 388.

> Defendants' conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate. Because ***Defendants' deceptive and unfair conduct*** is ongoing, injunctive relief is necessary and proper.

*Id.* at ¶ 389 (emphasis added).

73.    In addition, the Consolidated Complaint claims that "Defendants belated

Recall fails to provide consumers with any meaningful remedy and ***constitutes an unfair and deceptive trade practice***." *Id.* at ¶ 38 (emphasis added).

74.     Accordingly, the allegations in the Consolidated Complaint for the Snuga Swing Consolidated Action are based upon and/or arise out of Defendants' "unfair trade practices" concerning their misrepresentations and omissions of material fact in its marketing of the Snuga Swings for suitability for infant sleep and its inadequate recall that Defendants issued to consumers.

75.     Therefore, under the terms of the Policy, coverage for the Snuga Swing Consolidated Action is barred.

76.     Despite Defendants' seeking coverage from IUIC for the Snuga Swing Consolidated Action under the Policy, IUIC has taken the position herein and in its correspondence that coverage is barred for that Action because the Policy's Unfair Trade Practices Exclusion is triggered. Therefore, an actual, justiciable controversy exists between IUIC and the Defendants regarding their rights and duties under the Policy.

77.     Based on the foregoing, IUIC is entitled to a judicial determination and judgment, pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure, declaring that (a) the Policy does not afford coverage for the Snuga Swing Consolidated Action because the Unfair Trade Practices Exclusion is triggered, and (b) IUIC has no duty to advance **Claims Expenses** incurred or to be incurred in defending the Snuga Swing Consolidated Action.

## JURY TRIAL DEMAND

Plaintiff Illinois Union Insurance Company demands a trial by jury as to all issues so triable.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Illinois Union Insurance Company respectfully prays for an Order and Judgment of the Court granting the following relief:

1.  On its First Count, a declaratory judgment that (a) the Snuga Swing Consolidated Action is a **Claim** under the Policy, and (b) the Snuga Swing Consolidated Action is subject to the terms, Limit of Liability, and Retention under the Policy;

2.  On its Second Count, a declaratory judgment that (a) the Policy does not afford coverage for the Snuga Swing Consolidated Action because the Nonconformance Exclusion is triggered, and (b) IUIC has no duty to advance **Claims Expenses** incurred or to be incurred in defending the Snuga Swing Consolidated Action;

3.  On its Third Count, a declaratory judgment that (a) the Policy does not afford coverage for the Snuga Swing Consolidated Action because the Unfair Trade Practices Exclusion is triggered, and (b) IUIC has no duty to advance **Claims Expenses** incurred or to be incurred in defending the Snuga Swing Consolidated Action;

4.  Awarding Plaintiff its attorneys' fees and costs as allowable by law; and

5.  Awarding Plaintiff such other and further relief as the Court deems just and equitable.

Dated:  July 15, 2025

**LONDON FISCHER LLP**

By: _____
Richard S. Endres
Patrick G. Bollig
Attorneys for Plaintiff
ILLINOIS UNION INSURANCE
COMPANY

**OF COUNSEL**
*[Pro Hac Application Forthcoming]*
**WERNER AHARI MANGEL LLP**
Alan Joaquin
Alexandra N. Kajari
Attorneys for Plaintiff
ILLINOIS UNION
INSURANCE COMPANY

-30-
COMPLAINT FOR DECLARATORY JUDGMENT